Good morning, Your Honors. May it please the Court. My name is Ethan Ballow, and this morning I speak for Petitioner James Ivins. I'll watch my clock as I must, and I'll struggle mildly to save one minute on my own. To begin, on this appeal, this last chance habeas, Mr. Ivins contends that his 30 years to life sentence is grossly disproportionate to his crime of conviction, constitutes cruel and unusual punishment, and that the State Court did not issue any reasoned decision. The decision to deny such habeas relief is objectively unreasonable, and thus he deserves a DEPA merits relief from this Court and the striking of that 30-year life sentence. There's two key cases this Court has to decide where this Circuit has struggled with these similar issues. One is Crosby, and the first one is Gonzalez. And they each build on the platform of established Supreme Court precedent beginning with Solemn, the Supreme Court case, which really sets out what our modern jurisprudence is on the Eighth Amendment. And there's three factors this Court should take a look at, first in deciding whether there was error, whether it is a grossly disproportionate sentence, and two, whether the contrary finding, which it must infer from the State Court, is objectively unreasonable. One, the Court first has to assess the gravity of the effects versus the harshness of the penalty imposed. The second factor asks the Court to take a look at a comparison of sentences within this jurisdiction, 30-life sentences. What gets you 30 life in California? And the third factor that the Court suggests you would look at is intra-jurisdictional effects of similar cases. And what Gonzalez did, and Crosby confirms, is the second two factors really aren't in play anymore in this Circuit for California 290 cases. And that's because, one, 25 to life, or in this case 30 life sentences, for what is a regulatory offense, are disproportionate to other types of offenses that would get you such a sentence. In fact, what Crosby shows us is robbery or rape or manslaughter, second-degree murder, would get much lesser sentences than Mr. Ivins got for this registration offense. And similarly, it's not even a question we get to intra-jurisdictional comparison, because apart from Texas, there's nowhere in America where you get 30 to life for a registration offense. So it comes down to look at the factors that make up the proportionality or the gross disproportionality between what Mr. Ivins was convicted of and the sentence he's received. And we think there's six or seven reasons why this Court should consider this case more like Gonzalez and why the California Court's failure to do so was unreasonable. One, just like Gonzalez and Crosby, this is a passive crime. It's a failure to register crime. It's a regulatory offense. And even Solem recognized in that case the Supreme Court was dealing with someone who took action. He wrote a no-account check for $100 before the Supreme Court years later ultimately struck his sentence. But this was, it's even more passive than that. It's a failure to do something. But, counsel, would you agree that the California courts have made a distinction between the failure to register, and we have to give deference to the California legislature and how they have weighed the offenses. And so as interpreted by the California courts, there seems to be a distinction between the failure to register that does not implicate the purposes of the California court. And those that do. For instance, people who fail to register when they've changed addresses, as opposed to failure to register within five days of the birthday. How do you address that seeming distinction? Well, I think courts have made that distinction. I don't think it's the end game, but I do think it's you look at the statute of conviction and determine when, although they're both passive, how technical is it, how de minimis is it, and how closely is it related to a legitimate statute of conviction. And that would be my second point. One of the things that Crosby and Gonzalez both did is they talk about moral culpability, which is what Your Honor is talking about. And when they made the distinction between whether it's a duplicative birthday registration or this, they were talking about how the defendant, the registrant, must be proven to have actual knowledge of his obligation to register. Because when he has that actual knowledge, if he fails to register with the change of address, that's more closely related to the state's function of surveillance with respect to sex offenders. And I think in this case it's a few important distinctions which keep us under Gonzalez. One, there is no dispute that in this case the California trial court failed to properly instruct the jury that Mr. Ivins needed the requisite knowledge. But why does that matter if we know from the record that he had the requisite knowledge? Well, I would disagree with the second point. One, he testified that he believed he had 60 days. And pursuant to People v. North, there was a whole void for vagueness challenge in California, where the California Supreme Court agreed the statute with respect to transience was irreconcilably vague as how it was being interpreted. But didn't he tell the police officer or his, I can't remember, he told some official, I slipped up. Was it a probation officer? Parole officer. No, no, no. I think what you're referring to is the contested testimony that after his invocation of Miranda rights, he said something off the record, I know I slipped. And Mr. Ivins denied saying that. So that was a fight in the record. And that's the point. But even before that, didn't he mislead his parole officer? He certainly misled his parole officer with giving him a new address. But this goes to, again, the police surveillance point. If we take a look at Gonzalez, we take a look across, we say, what's the state's interest? The importance of viewing this person. The difference is, he, when he became homeless, he was embarrassed. He thought he had 60 days to go transit. So what did he do? He called his parole officer. He didn't wait. He called and said, give me some surveillance. He's essentially just leaving his stuff at Ken Lowe's apartment. He's staying in the area. He's available for inspection. So he does tell a small lie to his parole officer. But unlike Crosby, when Crosby gets arrested, he has fake IDs. When Crosby gets arrested, he's given, he has an outstanding warrant. When Crosby gets arrested, he lies about his name. Mr. Ivins does a couple of things. He brings a parole officer. Counsel, I'm not here to weigh the degree of the lie. A lie is a lie. I'm going to, let's go to proportionality. All right. You cited Solem. Lockler v. Andre from 2003 from the Supreme Court. Other cases seem to, while Solem is still, I think, good law, it seems to have been watered down to some effect. In Lockner, for instance, in the Supreme Court, they were dealing with California street three strikes law again. And in that case, the petitioner was convicted for stealing, I think, about $150 in videos. In some jurisdictions, that might be a misdemeanor. In others, it may be a felony, depending upon what state, I guess, you're in. In proportionality here, in that case, two consecutive terms, 25 years to life was imposed. Here you have the 25 years to life plus the five years under your California three strikes law. Just by comparisons, is that a valid comparison to make, to determine proportionality? What was given in other sentences? And here, it seems to be perhaps, I don't know, in weighing it all, a legal conclusion here that proportionality under Lockner would suggest, and in viewing what Judge Rollinson said about the, you know, seriousness for which the California legislature and courts interpreting it for this crime, to protect the public, for someone who fails to give a change of address, small lie or big lie, that protection of the public is at issue here. In that other case, it was a property crime. Isn't that a difference? That is a difference. If I can answer, I think you made three points on that. That's a long question. I'm sorry. No, don't be sorry, Your Honor. I'll unpack it as quickly as I can. One, Andrade's a three-judge plurality with two judges concurring the judgment who say disproportionality doesn't apply, and a four-judge dissent, and those judges are all still on the bench saying it survives. Good point. And Andrade, even the three-judge plurality, says Solemn's gross proportionality principle applies. Good point. Two, the distinction you made is the exact one the Supreme Court made, which was he made two consecutive property crimes. It was two videotapes for a man who had a 30-year criminal history, who was constantly breaking law, and he was a recidivist in the sense of he kept actively breaking law by stealing. In essence, what the record showed in Judge O'Connor's opinion, Justice O'Connor's opinion was, he was a heroin addict who stole to get his heroin. That was his lifetime career criminal activity. But there was a major difference between someone who fails to register or update a registration. He was, quote, unquote, outside of police surveillance. He did not update. Change of address. Change of address. He was outside of, quote, unquote, police surveillance for less than two, for fewer than two weeks. If he gets relief in this case, guess what, Your Honor? Guess what? He has five days to register to be back under police surveillance. And I do think there's a difference between updating an address, a regulatory offense, than a crime against a person, than a crime against property. I do think that's exactly what Gonzales and Clause B recognized, that there's something that a regulatory offense is different. But doesn't the record show here that your client had some other crimes against person? Domestic violence? 1991. He registered for 20 years, Your Honor. And yes, he has anyone who has a three-strike sentence has a criminal history. His two strikes were the original case when he was 18. The question is, and if you look at his record versus, we'll put it up, and none of it's laudable. It's a criminal record. But we'll stack it up against what they considered in Clause B and Gonzales, and Mr. Ivins is less helpful as a historical matter than either of those gentlemen. It's almost like, and I'm not speaking for the rest of the members of the panel, but it's almost like I'm being drawn into weighing the evidence here before the district judge on whether there was sufficient evidence to give the sentence he gave, when I'm not certain if that's my role. It seems as if in a Fifth Amendment issue, you know, I've got to take the record the way it is. But I think you're sort of right in a sense, and I think this is what Judge Noonan's dissent in Clause B talks about. It's about objectionably reasonable when you have the Jackson test for Rule 29. It's a hard thing, right? Can any rational juror have done it? There's not a dissimilarity here that it has to be objectively unreasonable. But for the reasons we've stated, we respectfully contend in this circumstance from Mr. Ivins, 30 to life is objectively unreasonable in this record. If I were imposing a sentence in the first instance, I would agree with you. I'm not sure under the Supreme Court precedent and our precedent that I can. But be that as it may, I wanted to ask you about the uncertified issue. Was that issue raised in the district court about the jury instruction? Not as clearly as we've raised it on appeal. He was pro per at the time. Okay. But I do think it's fairly subsumed within his jury instruction challenge. I wish he had appointed counsel. I don't know if there's anything that speaks to that. We all concede the jury was misinstructed. And it's terribly unfair that the first time on habeas he got lawyers to make it as clear as we have to this court. It's been conceded. But he wasn't able to articulate as clearly as we have when he was alone. Okay. Thank you, counsel. Thank you, Your Honor.  Thank you, Your Honor. Good morning, Your Honor. May it please the court, I'm Kevin Vienne. I'm a California Deputy Attorney General here for the appellee and respondent in this matter. At the very beginning, my opponent invites this court to make a case. My opponent actually asks this court to review the question de novo. He says this is a case about whether the Ninth Circuit precedent in Gonzalez or Crosby is closer in this matter. That is definitely not what this case is about. This case is subject to ADPA deference provision. And the only question that matters, according to the United States Supreme Court in Richter, quite clearly, is whether the state court's denial of this claim was unreasonable. Well, counsel, in the process of doing that, we do look at our precedent. We do look at the California cases to try to get a sense of proportionality. So I'm not sure it's fair to say he invited us to error. Because we do that. We look at the cases to see what approach has been taken in prior similar cases. We don't do this in a vacuum. Actually, Your Honor, I think that's fundamentally wrong. And while we haven't cited it, I'll be happy to provide additional reference to the court. But just recently, just in this past year, on April 1st, in a case called Marshall v. Rogers, the United States Supreme Court said as clearly as it could that you cannot look to circuit precedent to identify or clarify or sharpen Supreme Court precedent. Well, that's not what we do is if we have a circuit case that tells us what law has been clearly established, we are bound by that precedent. So I think you're kind of being a little disingenuous in making that argument, because we often look to our precedent to determine what law has been clearly established. Yes, Your Honor. I don't disagree that the Ninth Circuit has said that. But I think in cases like Marshall v. Rogers, it's clear that the Ninth Circuit's approach in that way has been wrong, at least on occasion, because that's exactly what happened in Marshall v. Rogers. The court looked at its precedent on the return of counsel after an individual has asserted the right to self-representation under FRERETA. And the court relied on circuit precedent to say this must be done. And the California  District Court said that's different than saying our clearly established precedent has interpreted the federal law this way. We're bound to follow that unless it's taken en banc or the Supreme Court reverses it. So let's agree to disagree on how we analyze our cases and tell us why this case should be, why the district court decision should be affirmed. Fine, Your Honor. And it is looking at whether the state court decision was reasonable or not, or under Richter, whether a fair-minded jurist could put together an argument in support of the state court's decision. It comes quite clearly from this court's decision. But let's also factor into that what was already factored into those decisions in the lower court, an Eighth Amendment concern here about, you know, whether this sentence was excessive. And in dealing with that, as I think Judge Rawlinson has indicated, and I don't want to misinterpret what she said, the record comes before us with an individual who seems to have tried to reach out to deal with this situation. He's homeless. He gives incorrect information to his parole officer. The record shows that. Small to big lie. It creates a concern here of public protection. The court's weighing all this, the lower court, and says, you know what, because of your prior conviction history and now this situation, we're going to give this sentence. Did the district court have any option but to give the sentence it gave here? You mean did the superior court? The sentencing court. Absolutely, Your Honor. And if you look at the record, it's quite clear that the court saw this as a question that had some merit for them. That is, the court looked at the nature of his current crime and looked at his history of recidivism. Unfortunately, unfortunately for Mr. Ivins, he has been an undeterrable recidivist. That is, he began his criminal history some 20 years earlier with a violent rape and forcible sex offense. That history followed with additional crimes, including domestic violence and assault in 2001, and another strike offense in 1994, excuse me, another strike offense, terrorist threat in 2001, where it looks like he could have been sentenced as a three striker but was sentenced leniently as only a single striker. And what was the difference in span of years between the last conviction and the conviction at issue here? It looks like the last conviction was in 2001. He received three years' imprisonment for communication of a terrorist threat. This crime occurred in June 2004. So three years and in that span of time there was at least... Does his record show recidivism in sex crimes? No, Your Honor. The only sex crime, I mean, there's the domestic violence crime and I don't know what the facts were of that assault, whether that involved any problem in that regard. Well, that was my understanding, that he did like a very violent rape early on, maybe an early offense. But that while he's been registering as a sex offender, he hasn't made a sex offense. Hasn't made a violent sex offense. Actually, as the district court noted in the report and recommendation, it looked like he was engaged in prostitution when he was arrested that led to this conviction, that he was dressed as a woman and he was flying down motorists. And I'll just finish with this question. And as a sex offender and that requirement to register and update and give change of addresses, is this the first instance where he's had a problem in that regard? It's the only one that he's been prosecuted for and it does look like they examined at trial the fact that he had been a regular registrar. But in this case, he did not register and then he not just told a lie, but he forged a document in order to mislead the court. He did register initially, correct? Yes. He had most recently registered in April, I think, when he moved into the halfway house. But when he got kicked out of that halfway house for criminal behavior that is improper or violation of the terms of the law. So he didn't register as a change of address when he was kicked out of the halfway house. Correct, Your Honor. Okay. But he talked to a parole officer and gave him some misinformation. He talked to a parole officer, contacted him on June 17th. It looks like he was removed on June 3rd. Although there seems there is some ambiguity in that regard. The testimony in this trial is that he was kicked out of the halfway house on June 3rd, 2004. On June 17th, he spoke to his parole officer. His parole officer said, I will be looking for you tomorrow and I'll be looking for an indication that you are properly registered. And that's when he presented the forged identification or registration document. Did he initiate that contact when he was kicked out? Did he initiate that contact with the parole officer? I can't tell from the record how that phone call occurred. That is, whether it was prearranged, whether he had periodic reporting, whether he called in or whether the parole officer called in. It seems likely that it was prearranged and he called in because there was no place for the parole officer to call him. Would not have reached him if he called him at the halfway house. So, counsel, in light of your argument that we should not rely on Ninth Circuit precedent, why did you cite Crosby v. Schwartz? Because Crosby v. Schwartz establishes that there's a reasonable argument to be made in support of the state court's decision. Crosby says that if it's not, Crosby, relying on Gonzales, says that if the crime is not simply failure to comply with the annual registration report requirement when you have not moved at all. So that was interpreting Andrade, and that was my point, that if we have precedent that's interpreting the clearly established law and telling us what it is, why wouldn't we look to that? Well, you should look to Crosby and you should look to the other three cases cited by the magistrate judge in the report and recommendation at page 31, excerpts of record page 31, where at least several fair-minded jurists in this case have said that if the crime is not seen as de minimis, but is instead a violation of the requirement to notify the authorities of a change of address, then the crime is not seen as de minimis. That's a rational explanation in support of the state court's determination, and that means the state court decision is and must be granted deference under the AEDPA. So certainly when the Ninth Circuit or when circuit courts or when other circuits have reached results similar to those that are reached by the state court in the resolution of a constitutional question, that demonstrates that fair-minded jurists could agree. And if fair-minded jurists can't agree with the state court resolution, Richter teaches that federal habeas corpus relief is not permitted. All right. Thank you, counsel. One minute for rebuttal. Thank you, Your Honors. I want to emphasize two points, if I may. What's really important to look at in this case is how long he was so-called out of compliance. My colleague is correct. There was a dispute about whether he got kicked out of the sober living facility on the 4th of June or the 5th of June. And the record is clear. He calls the parole officer. As my colleague ultimately conceded, how could the parole officer call him out if he was outside the sober living environment? He didn't have a phone number to reach him at. And if he did, he would have been even more available for surveillance. But he comes on the 17th, and he gives him the phony card saying, I'm living with Kenneth Lowe. What's important is he's stealing stuff at Kenneth Lowe's house. That's where he showers. That's where he leaves all of his minor personal possessions and what has not been the most, you know, successful life. And he stays in the area because he's homeless and he's transit. He's arrested within a week. He believes he has 60 days to register. The government proves he only has five. There's a misunderstanding, and North shows why that misunderstanding is reasonable. Gallo shows why you could understand. He didn't know the requirement. Under these facts, this case needs to fall under the technical passive exception because the government, the state, conceivably did not prove he had actual knowledge, that he was avoiding surveillance, and that he knew it. And because it's now a strict, he's basically was convicted of strict liability. He missed the five days. There's no doubt he missed it. He's guilty. And 30 to life for a strict liability offense is improper. This Court would not approve a California registration effect, forget recidivism, if it was strict liability. The moral culpability that comes from acting and acting, even if it's the lack of an action, has to come in Crosby and Gonzales or Clear through that actual knowledge. And on this record, he didn't have it. And that's what makes this case fundamentally unfair. And that's what makes the sentence grossly disproportionate. Those are the other factors we present to the Court. We believe support a finding that a contrary decision would be objectively unreasonable. We ask the Court respectfully for relief.
judges: Lemelle, Gould, Rawlinson